MATTHEW EDWARD SIERKA,

      **Plaintiff,**

-vs-             Case No.  6:08-cv-1073-Orl-28GJK

COMMISSIONER OF SOCIAL
SECURITY,

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

   Plaintiff Matthew Edward Sierka (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability, disability insurance benefits and supplemental security income payments. *See* Doc. No. 1.  For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g)**.

## I.  <u>SUMMARY OF DISABILITY CLAIM</u>

   On August 23, 2005, the Claimant filed an application for child's insurance benefits, alleging disability as of January 1, 1995. R. 70-77.  On December 18, 2007, after conducting an administrative hearing, Administrative Law Judge Gerald F. Murray (the "ALJ") issued a decision that Claimant was not disabled. R. 17-26.  The ALJ made the following significant findings:

1. Prior to attaining age 22, the Claimant had the following severe impairments: seizure disorder, borderline intellectual functioning and chronic mild depression;

2. The Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible;

3. Prior to attaining the age of 22, the Claimant had the residual functional capacity ("RFC") to perform a significant range of medium work: he can occasionally lift 50 pounds, 25 pounds or less, frequently; he can sit for up to 6 hours and stand/walk for up to 6 hours in an 8-hour workday, with normal breaks; he can perform push/pull functions with each extremity; he can climb ramps and stairs, but not ropes, ladders or scaffolds; he can stoop, kneel, crouch and crawl; due to his seizure disorder, he should avoid unprotected heights and working machinery; he is generally capable of appropriate communications with his supervisors and co-workers; and

4. Prior to attaining the age of 22, the Claimant's past relevant work as a Wal-Mart deli department worker did not require the performance of work-related activities precluded by his RFC.

*Id.* After requesting and being granted review by the Appeals Council, the Appeals Council issued a decision adopting the ALJ's findings and conclusions regarding whether the Claimant is disabled. R. 8-11. On July 3, 2008, Claimant filed an appeal before this Court. Doc. No. 1.

## II.  THE PARTIES' POSITIONS

The Claimant assigns three errors to the Commissioner. Doc. No. 10. First, neither the ALJ nor the Appeals Council made findings regarding the side effects of Claimant's medications on his ability to work. *Id.* at 2. Second, the Appeals Council applied an incorrect legal standard

by not remanding the case to the ALJ. *Id.* Finally, the ALJ did not properly assess Claimant's past relevant work. *Id.*

The Commissioner argues that substantial evidence supports his decision to deny disability because the Claimant is only partially disabled, not totally disabled. Doc. No. 12 at 6. First, the Commissioner maintains that the ALJ and the Appeals Council considered Claimant's side effects from his medications. *Id.* at 6-7. Second, the Commissioner states that the Appeals Council committed no error by not remanding the case to the ALJ. *Id.* at 8. Finally, the Commissioner maintains that the ALJ properly assessed Claimant's past relevant work. *Id.* at 10.

## III.    RELEVANT MEDICAL HISTORY

On May 18, 1989, John A. Ortolani, M.D., completed an Electroencephalography Report on behalf of the Claimant which indicated the following:

> Abnormal tracing consistent with a mild diffuse nonspecific slowing. No focal abnormalities nor seizure like discharges are noted. This is a significant improvement over previous tracings of his child.

R. 179. On July 25, 1996, the Claimant was examined by John Shedd, M.D., who assessed him with a seizure disorder. R. 182-83. On July 25, 2002, an electroencephalogram ("EEG") was performed on the Claimant. R. 204. Mary J. Derbenwick, M.D., indicated the EEG was "abnormal and consistent with a focal epileptiform abnormality in the right temporal area consistent with a focal seizure disorder." *Id.*

On August 23, 2005, the Claimant filed his application for child's insurance benefits. R. 70-77. The Claimant indicated that his seizure disorder limits his ability to work. R. 61. He has previous employment as a bag boy at Winn Dixie, a dishwasher at a restaurant, and a deli department worker at Wal-Mart. *Id.*, 177. In his Disability Report, the Claimant indicated that

his seizure medications, Depakote and Trileptal, cause drowsiness. R. 67.

On September 15, 2005, medical consultant Michael Presley completed a physical RFC assessment wherein he indicated that the Claimant had no limitations except he should never climb a ladder, rope or scaffold. R. 220-27.  He stated that the Claimant's symptoms of fatigue may be attributed to his medication side effects. R. 225.

On September 21, 2005, the Claimant went to the Halifax Medical Center Emergency Room with a chief complaint of fatigue and was examined by John E. Prairie, M.D. R. 285.  The Claimant's parents informed Dr. Prairie that Claimant had been fatigued for months and was sleeping nineteen (19) hours a day. *Id.*

On October 6, 2005, J. Jeff Oatley, Ph.D., performed a psychology evaluation on the claimant. R. 228-30.  Dr. Oatley noted that the Claimant's attention span and activity level was somewhat poor because he seemed tired and/or sedated. R. 229.  After performing the Wechsler Adult Intelligence Scale, III and the Woodcock Johnson Tests of Achievement, III, Dr. Oatley diagnosed the Claimant with Borderline Intellectual Functioning and Seizure Disorder. R. 229-30.  He indicated the following under "DAILY FUNCTIONING":

> 1.  Activities of daily living:  [Claimant] lives with his father.  He prepares meals.  He rides the school bus.  The father drove [Claimant] to this appointment today.  He is self sufficient in bathing and dressing.  He cleans his room and washes dishes.
> 2.  Social functioning:  [Claimant] reports that he has friends and that he enjoys playing video games.  He does not attend church on a regular basis.
> 3.  Concentration and task persistence:  [Claimant] reports that he has no difficulty completing routine household chores.
> 4.  Employment:  [Claimant] had worked as a dishwasher for 14 months after school, but left that job.

R. 230.

On October 11, 2005, Theodore J. Weber, Psy.D., performed a mental RFC assessment on the Claimant. 231-34.  Dr. Weber noted that the Claimant was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods of time and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 231-32.  Dr. Weber did not note any instances where the Claimant was markedly limited. *Id.*  He stated that the Claimant "can interact appropriately in a social or work-like setting without difficulty." R. 234.  Dr. Weber also completed a psychiatric review form wherein he indicated the Claimant had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. R. 235-48.  On February 9, 2006, Alejandro F. Vargara, M.D. completed a psychiatric review form which included the same findings of functional limitations as that of Dr. Weber. R. 251.

On February 14, 2006, Eric Puestow completed a physical RFC assessment on behalf of the Claimant. R. 254-259.  He indicated that the Claimant could occasionally lift 100 pounds or more, frequently 50 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 254A.  He noted that Claimant should never climb a ladder, rope or scaffold and he should avoid concentrated exposure to hazards. R. 255-56.

On February 15, 2006, Elek J. Ludvigh, Ph.D., performed a number of tests on the Claimant. R. 260-73.  He noted that Claimant was "sometimes emotionally subdued." R. 261.

Dr. Ludvigh stated the following:

> [Claimant]'s ability to reason and solve problems involving language and abstract ideas (Verbal Comprehension Index) is within the Low Average range at approximately the 18th percentile. His ability to reason and solve problems involving concrete objects and visual-spatial relationships (Perceptual Organization Index Score) is within the Average range at approximately the 42nd percentile. The Working Memory Index includes tasks which all involve numeric processing and memory work. On this Index [Claimant] scored within the Average range at approximately the 34th percentile. [Claimant]'s reasoning and problem solving skills are obviously much better when he is working with numbers and visual-spatial relationships rather than with language.

R. 263. He diagnosed the Claimant with a Reading Disability and noted that his K-TEA (Kaufman Test of Educational Achievement) scores would correspond to a Fourth Grade Equivalent in Reading and a Seventh Grade Equivalent in Mathematics. *Id.* Dr. Ludvigh also diagnosed him with dysthymia and stated that psychotherapy "is highly recommended due to the extent to which his depressive behaviors impair his ability to obtain employment or further benefit from the rehabilitation process." R. 264-65. He stated that the Claimant "will have difficulty in effectively focusing upon work activities and his mind will tend to wander to critical, suspicious, anxious, or other depressive thoughts." R. 265.

From September 21, 2006 through April 20, 2007, the Claimant was treated by Hendrik Dinkla, M.D. R. 274-79. On September 21, 2006, Dr. Dinkla's records reflect the following:

> This is the first time I am seeing him. He comes in with his father. I have notes from Dr. DeSai concerning his diagnosis of seizure disorder. He apparently has seizures and has had numerous positive EEGs. The seizures, however, are described rather vaguely by both he and his father, and there is a question as to whether or not some of these may be non epileptic. He seems very lethargic, but his father states that he is like this when he has a seizure at night. He had a Depakote level that was 133 just this past month. He is also on 600 mg of Trileptal twice per day. They describe what may be focal seizures with involuntary movements of one arm, but his father also states that he has grand mal seizures, and

> he reports that at times he will wake having chewed his tongue. I think this is rather convincing evidence that he may have true seizures. . . He reports that his seizures increased when he went down on the Depakote in the past. He has been on Topamax, Tegretol, Phenobarbital, and Dilantin. He says that the Trileptal seemed to work at first, and he notes that a few years ago when he went up on the Trileptal he developed double vision. . . I am going to go up on the Trileptal to 900 mg twice per day. If he develops double vision, we will cut down on the Depakote to 250 mg twice per day. If he is still having seizures with a level of 133, then I think that Depakote may not be the drug of choice.

R. 278. Thereafter, on April 20, 2007, Dr. Dinkla indicated that he wanted the Claimant to taper off of the Depakote and manage the Claimant's condition solely with an increased dosage of Trileptal. R. 274. Another problem developed by the Claimant was sleepwalking, which Dr. Dinkla stated was reported to occur but was "extremely rare". *Id.* The medical record does not contain any more recent documents that would reflect what effect, if any, the changes made in Claimant's medications may have had regarding side effects.

On October 16, 2007, the ALJ held an administrative hearing on the Claimant's claim. R. 330-44. When asked why he needed disability, the Claimant complained of seeing double and being a slow learner. R. 334. The Claimant testified that he was presently taking classes to be a computer support specialist at a community college and working 25 to 28 hours a week at Wal-Mart. R. 335-36. According to the Claimant, he cleaned the meat slicers in the deli department at Wal-Mart. R. 336. The ALJ did not solicit further testimony as to his job requirements. R. 335-44. The Claimant stated that working at Wal-Mart is causing him to fail his classes. R. 337. When asked by his attorney about the side effects of his medications, the Claimant testified that he feels dizzy at times and is always tired. R. 341, 343. The ALJ did not inquire further into the Claimant's statements as to the side effects.

On December 18, 2007, the ALJ issued his decision that the Claimant was not disabled

and made the findings addressed above. R. 17-26. The ALJ stated the following in regard to the

Claimant's medications and side effects:

> Dr. Ludvigh noted that the claimant's seizure medications were being administered at relatively high doses and the claimant stated he was always tired and frequently felt sedated.
>
> . . .
>
> [The Claimant] said that Trileptal caused him to feel sleepy, dizzy, to have double vision, and that he was always tired. He reported that he took 600 mg twice per day and that sometimes a seizure would awaken him and he would remain awake for the rest of the night.

R. 21, 24. As stated above, the ALJ found that the Claimant was not entirely credible. R. 25.

However, the ALJ did not articulate how he arrived at that finding.

After requesting and being granted review by the Appeals Council, the Appeals Council

issued a decision adopting the ALJ's findings and conclusions in his decision. R. 8-11. The

Appeals Council stated the following:

> In reaching his conclusion [that claimant was not disabled], the [ALJ] indicated on page 9 that some weight was given to the opinion of a Florida State Agency non-examining medical consultant who reviewed the record and opined that the claimant did not have an exertional limitation and was capable of a full range of exertional level work. However, in this case, the reviewing medical consultant that the [ALJ] referred to is not an acceptable medical source but is instead a disability examiner (Exhibit 3F). This deficiency notwithstanding, the Appeals Council notes that the [RFC] assessment found by the [ALJ] is, nevertheless, supported by substantial evidence in the record.
>
> . . .
>
> The Appeals Council also notes that the decision included a detailed summary of the criteria used to assess the claimant's credibility (page 8), but there essentially was no application of those criteria to the facts in this case. However, after considering the evidence of record, the Council finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that his

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The record shows that, on October 6, 2005, the claimant underwent a psychological evaluation by J. Jeff Oatley, Ph.D. It was indicated in the psychological report that the claimant was able to prepare meals, bathe and dress himself, and clean and wash dishes. The claimant has friends and he enjoys playing video games. There was no difficulty reported in the claimant's ability to complete routine household chores (Exhibit 4F). Although the record reveals in September 2005 that the claimant complained of side effects from medications he was taking (Exhibit 11F), the record further shows that his medications were adjusted and no further complaints have been established. Matter of fact, in October 2006, Dr. Dinkla noted that he had considered the possibility of prescribing Lamictal, as this might be a reason to get the claimant off of Depakote. However, he indicated that since the claimant was not having any problems with his seizure disorder, he did not want to change medications (Exhibit 10F). In addition, the Council notes that no physician, treating or otherwise, has documented the nature, severity and limiting effects of the claimant's impairments with sufficient medical facts and clinical findings that would corroborate his assertions of disability, together with functional limitations which would preclude the [RFC] assessed by the [ALJ].

R. 9. Thus, the Appeals Council adopted the ALJ's decision on Claimant's disability. R. 10. On July 3, 2008, Claimant filed an appeal before this Court. Doc. No. 1.

## IV. LEGAL STANDARDS

### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has promulgated regulations that provide for the payment of a disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5). The medical standards for this "adult child" program are the same as for adults applying on their own wage records. 20 C.F.R. § 404.1505. The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in

order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must

consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his

ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical

exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

**B.      THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d

1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court

must either find that the Commissioner's decision is not supported by substantial evidence, or

that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99

F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of

claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand

appropriate where record was insufficient to affirm, but also was insufficient for district court to

find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a

sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his

decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to

allow ALJ to explain his basis for determining that claimant's depression did not significantly

affect her ability to work).[1]

## V.  ANALYSIS OF ALLEGED ERRORS

### A. Whether the ALJ and Appeals Council Erred in Failing to Make Specific Findings Regarding Side Effects Caused by Claimant's Medication

The Claimant argues that the ALJ and the Appeals Council erred by failing to make

specific findings regarding the side effects of the Claimant's medications. Doc. No. 10 at 9.  As

set forth above, the Claimant testified that he is always tired, feels dizzy at times and has double

vision. *See above*, p. 6.  He also indicated on his Disability Report that his seizure medications

cause drowsiness. R. 67.  Furthermore, the medical record is consistent with the Claimant's

---

[1] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

complaints of negative side effects.  *See* R. 229, 261, 278, 285.  In his decision, the ALJ stated

the following in regard to the Claimant's medications and side effects:

> Dr. Ludvigh noted that the claimant's seizure medications were being
> administered at relatively high doses and the claimant stated he was
> always tired and frequently felt sedated.
>
> . . .
>
> [The Claimant] said that Trileptal caused him to feel sleepy, dizzy, to
> have double vision, and that he was always tired.  He reported that he
> took 600 mg twice per day and that sometimes a seizure would awaken
> him and he would remain awake for the rest of the night.

R. 21, 24.[2]  Aside from acknowledging the side effects, the ALJ did not make any specific

findings.  On review, the Appeals Council stated:

> Although the record reveals in September 2005 that the claimant
> complained of side effects from the medications he was taking (Exhibit
> 11F), the record further shows that his medications were adjusted and no
> further complaints have been established.    Matter of fact, in October
> 2006, Dr. Dinkla noted that he had considered the possibility of
> prescribing Lamictal, as this might be a reason to get the claimant off of
> Depakote.  However, he indicated that since the claimant was not having
> any problems with his seizure disorder, he did not want to change
> medications (Exhibit 10F).    In addition, the Council notes that no
> physician, treating or otherwise, has documented the nature, severity and
> limiting effects of the claimant's impairments with sufficient medical
> facts and clinical findings that would corroborate his assertions of
> disability, together with functional limitations which would preclude the
> [RFC] assessed by the [ALJ].

R. 9.  Thus, the Appeals Council considered the side effects of the Claimant's medications but

found the medical records since September of 2005 failed to reflect any side effects.  The

Appeals Council's statement that no further complaints of side effects have been established

since September 2005 appears to be based solely on the medical records, but it is simply

---

[2] The Physician's Desktop Reference describes the following side effects for Trileptal:  abnormal gait, dizziness, double vision, headache, involuntary movement of the eyeballs, nausea, sleepiness, tremor, uncoordinated muscle movement, visual disturbances, vomiting and weakness.  Physicians Desktop Reference, www.pdrhealth.com.

inaccurate. For instance, in July of 2006, Dr. Dinkla reported that the Claimant "seem[ed] very lethargic". R. 278.[3] He noted that if the Claimant developed double vision, he would to decrease the Depakote. R. 278. Thereafter, on April 20, 2007, Dr. Dinkla indicated that he wanted the Claimant to taper off of the Depakote and manage his condition solely with an increased dosage of Trileptal. R. 274. Another problem developed by the Claimant was sleepwalking, which Dr. Dinkla stated was reported to occur but was "extremely rare". *Id.* The medical record does not contain any more recent documents that would reflect what effect, if any, the changes made in Claimant's medications may have had regarding side effects.

In the Eleventh Circuit, the ALJ has the duty to develop a full and fair record even when the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (ALJ's duty to develop a full and fair record exists whether or not the applicant is represented). In *Rease v. Barnhart*, 422 F.Supp.2d 1334, 1372 (N.D. Ga. 2006), the court explained the connection between the claimant's burden and the ALJ's duty as follows:

> Although the burden of proof is on the claimant to prove disability, the ALJ is under a duty to conduct a full and fair inquiry into all the matters at issue. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir.1981). Thus, in general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).

. . .

---

[3] The Claimant's father indicated that the Claimant is lethargic after having a seizure at night. R. 278.

> When the medical evidence is inadequate for the Commissioner to
> determine whether the claimant is disabled, the Commissioner has the
> responsibility to re-contact the claimant's treating physician(s) or other
> medical source(s) and determine whether the additional information the
> ALJ needs is available. 20 C.F.R. § 404.1512(e). If the additional needed
> medical evidence is not readily available, then the ALJ should obtain a
> consultative examination. 20 C.F.R. §§ 404.1517 and 416.917; *Sellers v.
> Barnhart*, 246 F.Supp.2d 1201 (M.D.Ala.2002); *Holladay v. Bowen*, 848
> F.2d 1206, 1210 (11th Cir.1988); *Caulder v. Bowen*, 791 F.2d 872 (11th
> Cir.1986); *compare Murray v. Heckler*, 737 F.2d 934 (11th Cir.1984).

*Id.* at 1372. In *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981), the Eleventh Circuit held

that the ALJ failed in his duty to fully develop the record because "he neither elicited testimony

nor made any findings regarding the effect of [claimant]'s prescribed medications upon her

ability to work." *Id.* at 737. In *Cowart*, the court noted the claimant's testimony at the

administrative hearing that she was "kind of zonked most of the time" as a result of taking her

medications. *Id.* Thereafter, the court stated: "It is conceivable that the side effects of

medication could render a claimant disabled or at least contribute to a disability." *Id.* The Court

quoted *Figueroa v. Secretary of HEW*, 585 F.2d 551 (1st Cir. 1978), which held:

> The present record contains no medical evidence regarding whether the
> appellant's medication was in "unusually large doses" or whether its side
> effects might conceivably be disabling. While appellant's claim might
> be exaggerated, a layman is in no position to make any such
> determination on this record. It would have been appropriate for the
> [ALJ] to have sought further medical evidence, or to have made some
> further inquiry, since appellant raised the question. *See Thompson
> v.Califano*, 556 F.2d 616, 618 (1st Cir. 1977); *Miranda v. Secretary*, 514
> F.2d 996 (1st Cir. 1975). At the very least, the [ALJ] should have made
> a finding on appellant's claim regarding side effects, making it possible
> for a reviewing tribunal to know that the claim was not entirely ignored.

*Id.* (quoting *Figueroa*, 585 F.2d at 554).

In the present case, it is apparent that the ALJ and the Appeals Council were aware

Claimant was taking high levels of medications and considered the side effects of the Claimant's

medications. Nonetheless, it is recommended that the case be remanded on the basis that the Court is unable to determine whether substantial evidence supports their decision. First, the Appeals Council rejected Claimant's subjective complaints at least partially based on the erroneous statement that the medical record after September of 2005 does not reflect any complaints about the side effects of medication. *See e.g. Rodgers v. Astrue*, Case No. 3:05-cv-543-J-TEM, 2009 WL 513757 at *4 (M.D. Fla. March 2, 2009) (holding that the ALJ's misstatements of the record justifies a sentence four remand). Second, the ALJ and Appeals Council never made a finding regarding whether the side effects of Claimant's medication might conceivably be disabling. *Cowart*, 662 F.2d at 737; *Figueroa*, 585 F.2d at 554. Third, Claimant's medications were changed, Trileptal dosage was increased further and he was taken off of Depakote, and the medical record does not contain documents after that change was made. Since Claimant raised the issue of the side effects of his medication, the ALJ should have more fully developed the record on the issue. *Cowart*, 662 F.2d at 737; *Figueroa*, 585 F.2d at 554; *Graham*, 129 F.3d at 1422.

### B. Whether the Appeals Council Applied an Incorrect Standard of Law

As set forth above, the ALJ determined that the Claimant's statements as to his symptoms were not entirely credible. R. 25. However, the ALJ did not articulate specific reasons in forming his opinion, which is reversible error.[4] Thereafter, the Appeals Council addressed the

---

[4] Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of HSS*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1562.

Claimant's credibility, found that the Claimant was not entirely credible and articulated specific reasons in support of said finding. R. 9.  Claimant maintains that the Appeals Council applied an incorrect legal standard by not remanding his case to the ALJ following his legal error. Doc. No. 10 at 13.  Claimant relies on HALLEX (Hearings, Appeals and Litigation Law Manual) I-3-304.D and 20 C.F.R. §§ 404.953, 404.944.

According to HALLEX, "where the record is incomplete or credibility and/or subjective complaints are at issue, the Appeals Council will remand the case to an ALJ for further proceedings." HALLEX I-3-3-4, 1993 WL 643126.  The Fifth Circuit has held:  "While HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even when the internal procedures are more rigorous that otherwise would be required.'" *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).  20 C.F.R. § 404.944 states, in pertinent part:  "At the hearing, the administrative law judge looks fully into the issues, questions [the claimant] and the other witnesses, and accepts as evidence any documents that are material to the issues." 20 C.F.R. § 404.944.  20 C.F.R. § 404.953(a) provides:  "The [ALJ] shall issue a written decision that gives the findings and fact and reasons for the decision." 20 C.F.R. § 404.953(a).  The Claimant maintains that the role of the ALJ versus the Appeals Council is distinguishable and states: "Allowing administrative appeals judges to make determinations on credibility when they have bever [sic] even seen the witness is a dangerous precedent, Claimants have their right to their day in court, in the form of hearings before administrative law judges." Doc. No. 10 at 16.

The Commissioner maintains that the Claimant misapplied HALLEX because the articulation of reasons for discrediting his testimony was the issue on review rather than the

Claimant's credibility. Doc. No. 12 at 8.  Furthermore, the Commissioner states that the Eleventh

Circuit has approved credibility findings by the Appeals Council. *Id.* at 9 (quoting *Parker v.*

*Bowen*, 788 F.2d 1512, 1520 (11th Cir. 1986).[5]  In *Parker*, the Eleventh Circuit held "that in

cases where the Appeals Council reverses an ALJ's decision on its own motion, judicial review

is limited to determining whether the Appeals Council's decision is supported by substantial

evidence. *Parker*, 788 F.2d at 15-20.  With respect to credibility, the court held "that the Appeals

Council is not bound by the ALJ's credibility findings, but when it rejects such findings, it

should ordinarily do so expressly, articulating the reasons for its conclusion." *Id.* at 1520; *see*

*Bowker v. Heckler*, 596 F.Supp. 1416 (D.C. Me. 1984).  In support of such holding, the Eleventh

Circuit quoted *Beavers v. Secretary of Health, Education & Welfare*, 577 F.2d 383 (6th Cir.

1978), which held:

> It is beyond dispute that the Appeals Council, and the Secretary, have the
> *power* to conclude that testimony, even if uncontradicted in the record, is
> not credible, since the Secretary is entrusted with the duty of making all
> findings of fact . . .  Nevertheless, this Court still has the responsibility of
> determining whether there is substantial evidence to support the Appeals
> Council's decision, and when the administrative law judge has concluded
> that a witness's testimony is credible, that is an important factor to
> consider.  The notion that special deference is owed to a credibility
> finding by a trier of fact is deeply imbedded in our law.  The opportunity
> to observe the demeanor of a witness, evaluating what is said in the light
> of how it is said, and considering how it fits with the rest of the evidence
> gathered before the person who is conducting the hearing, is invaluable,
> and should not be discarded lightly.

*Parker*, 788 F.2d at 1521 (quoting *Beavers*, 577 F.2d at 386-87 (emphasis in original)).

In the present case, the Appeals Council did not reject the ALJ's credibility determination

on its own motion.  Rather, it noted that the ALJ's credibility determination was deficient, found

---

[5] *Parker v. Bowen*, 788 F.2d 1512 (11th Cir. 1986) is an Eleventh Circuit opinion following a rehearing *en banc* of
consolidated appeals, *Hand v. Heckler* and *Parker v. Bowen*.

the Claimant not entirely credible and articulated its reasons in support. Pursuant to *Parker* and *Beavers*, the Appeals Council was within its power to do so. It is this Court's obligation to consider whether substantial evidence supports the Appeals Council's decision. *Beavers*, 577 F.2d at 386-87. Thus, the undersigned recommends that the Court find the Appeals Council did not apply an incorrect legal standard.

### C. Whether the ALJ Erred in Assessing Claimant's Past Relevant Work

As previously stated, the ALJ found that prior to attaining the age of 22, the Claimant had the RFC to perform a significant range of medium work: he can occasionally lift 50 pounds, 25 pounds or less, frequently; he can sit for up to 6 hours and stand/walk for up to 6 hours in an 8-hour workday, with normal breaks; he can perform push/pull functions with each extremity; he can climb ramps and stairs, but not ropes, ladders or scaffolds; he can stoop, kneel, crouch and crawl; due to his seizure disorder, he should avoid unprotected heights and working with machinery; he is generally capable of appropriate communications with his supervisors and co-workers. R. 23. Thereafter, he determined that the Claimant could return to his past relevant work as a Wal-Mart deli department worker. R. 25.

The Claimant argues that the ALJ did not properly assess his past relevant work because the ALJ failed to develop evidence of the physical requirements of his past relevant work. Doc. No. 10 at 17. Specifically, the ALJ found that the Claimant could not climb ropes, ladders or scaffold, and that he should avoid unprotected heights and working machinery, yet, he failed to inquire as to whether Claimant's past work in the deli department required him to perform any of these acts, such as using a slicing machine or other cutters in the deli. *Id.* The Commissioner maintains that substantial evidence supports his decision because "the record does not support

[Claimant]'s allegations of double vision and seizures on the job." Doc. No. 12 at 10. The Commissioner states that the Claimant never mentioned feeling in danger of injury and that Dr. Dinkla stated Claimant had never had an accident due to his seizure disorder. *Id.* Although a claimant bears the burden of establishing an inability to return to his past relevant work, the Secretary must develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). "Where there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the claimant has the [RFC] to perform his past relevant work." *Id.*

The Commissioner's argument is without merit because the ALJ specifically found that the Claimant's RFC prohibited him from working with machinery. R. 23. Therefore, that limitation must be accepted and the sole question remaining is whether the Claimant's past relevant work involved such activities. According to the Claimant's testimony, he cleaned the meat slicers in the deli. R. 336. The ALJ did not inquire further into his job requirements. R. 335-44. Thus, as in *Schnorr*, it is unclear in the present case whether the ALJ determined the Claimant could return to his normal duties at the Wal-Mart deli department. Accordingly, the Court recommends that this action be remanded to better determine the Claimant's ability to return to his past relevant work.

## VI.   CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g)**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 23, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Richard A. Culbertson
Law Office of Richard A. Culbertson
Suite E
3222 Corrine Dr.
Orlando, Florida        32803

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, Suite 400
8880 Freedom Crossing
Jacksonville, Florida  32256-1224